FILED

APR 1 6 2012

U.S. Court of Appeals
Fourth Circuit

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT



RECEIVED

2012 APR 16  AM 9: 45

U.S. COURT OF APPEALS
FOURTH CIRCUIT

No. 12-1264

JIHUI ZHANG

Plaintiff-Appellant,

v.

FEDERATION OF STATE MEDICAL BOARDS,
NATIONAL BOARD OF MEDICAL EXAMINERS,
and PROMETRIC INC.,

Defendants-Appellees

## PLAINTIFF-APPELLANT JIHUI ZHANG'S INFORMAL REPLY BRIEF

Plaintiff-Appellant Jihui Zhang ("Zhang"), pursuant to Local Rule 34(b) and the Informal Briefing Order [Appeal Doc. #2], respectfully submits this Informal Reply to defendant-appellee Prometric Inc.'s ("Prometric") Informal Response [Appeal Doc. 15 & 16] and to defendants-appellees Federation of State Medical Boards' ("FSMB") and National Board of Medical Examiners' ("NBME") Informal Response [Appeal Doc. 17]. In this Informal Reply, Zhang gives point-to-point rebuttal to the argument on issues for review raised in their Informal Responses.

## STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY

In October of 2007, Zhang, a former medical doctor in China and a research faculty member in the Department of Pediatrics of the University of North Carolina at Chapel Hill, resigned from his research job to pursue his passion of clinical medicine. As with all medical school graduates in the U.S., he was required to pass the United States Medical Licensing Examination ("USMLE"), which consists of three steps – Step 1, Step 2 Clinical Knowledge (CK) and Step 2 Clinical Skills (CS), and Step 3 – cosponsored by appellees NBME and FSMB with computer-based testing service provided by appellee Prometric. By June of 2008 (within a period of eight months), he had successfully passed Step 1 (with a score of 86 while 75 is passing), Step 2 CK (with a score of 84 while 75 is passing), and Step 2 CS (PASS, no numerical score given for this test). All three tests were passed on his first try with no repeats. For his Step 3 test, Zhang spent over eighteen months to prepare in order to achieve a score in the mid 90s or above.

On December 07, 2009, Zhang scheduled his Step 3, a two-day test, using Prometric's automated online scheduling service. He was given two test dates of January 25 (Monday) and 28 (Thursday), 2010 (Doc. #1, Exhibit A). He took the test as scheduled at Prometric Test Center in Greensboro, North Carolina, and the test went well as expected. On February 17, 2010, Zhang received his Step 3 score report with an extremely low score of 68, while 75 was considered passing. [Doc. 39 Ex. A].

Here, Zhang cautions that just looking at the score can be very misleading in this case. His score of 68 was almost two and a half standard deviations below the mean, which indicates it was approximately at or below the bottom one percentile for all examinees. [Doc. #39 p. 4, score curve graph].

In utmost shock and disbelief, Zhang immediately submitted a request to FSMB for a score recheck on the same day by following USMLE policy. On February 22, 2010, he contacted FSMB by phone and learned that there was a potential violation of USLME policy in administering his Step 3 test on a Monday and a Thursday. (It was noticed with due diligence by Lisa of FSMB's Office of Examination Services.) [Doc. #1 p. 2-3, Doc. #27 p. 4, Doc #29 p. 5, Doc. #34 p. 6]. It was later confirmed by Prometric to be indeed a violation of USMLE policy. (It was unequivocally admitted by Prometric representative Gwen.) [Doc. #1 p. 4, Doc. #27 p. 4, Doc. #34 p. 6]. Zhang believed with high confidence that his Step 3 test was not properly scored due to this violation of test administration and that a score recheck would surely correct the error in his Step 3 score.

On March 26, 2010, however, Zhang received the score recheck result stating, "The scores were found to be accurate as originally reported." [Doc. #1 p. 3, Doc. #34 p. 7-8 and Ex. F]. The report did not contain any information regarding how the score recheck was done or any evidence to support the recheck results. Regarding his date of exam, only Monday of 1/25/2010 was listed with no mentioning of Thursday, 1/28/2010. There was not even the slightest evidence or indication in the report to

3

suggest that his test on two non-consecutive days of Monday and Thursday was even taken into consideration when the recheck was done.

Zhang contacted the NBME's Office of Test Administration to seek answers to two specific questions: 1). Is administering Step 3 test on a two non-consecutive days of Monday and Thursday a violation of USMLE policy? 2). What is the impact of such a test administration on his Step 3 score? In an April 2, 2010 letter, NBME stated, "It is not uncommon nor against USMLE policy for examinees to be scheduled on non-consecutive days." [Doc. #1 Ex. C]. USMLE policy does in fact permit the two days of Step 3 test to be non-consecutive if and only if the Prometric Test Center is scheduled to close after the first day of testing, such as when the next day falls on a weekend or holiday. [Doc. #1 Ex. B]. However, the letter did not address the specific question of whether or not UNSMLE policy allows administering Step 3 test on two non-consecutive days of Monday, January 25, 2010 and Thursday, January 28, 2010.

Realizing it had failed to give legitimate explanation, NBME took weeks to conduct a review by its senior staff. In an April 22, 2010 letter by Ms. Mary E. Patterson of NBME's Test Administration, she stated, "Our review confirmed that the center at which you tested is often closed on Tuesday and Wednesday." [Doc. #1 Ex. D]. The review, however, did not address whether or not the Prometric Test Center at which Zhang tested was indeed closed on Tuesday of January 26, 2010 and Wednesday of January 27, 2010. As a matter of fact, Zhang remembered clearly that,

on Thursday of January 28, 2010 when he took his second part of Step 3 test, there were other examinees who were also taking their second part of the test but had their first part taken on the previous Wednesday. [Doc #29 p. 10, Doc #34 p. 5]. The finding of "often closed on Tuesday and Wednesday" in Ms. Patterson's letter, which was allegedly reached by a group of NBME's senior staff members, was hardly tenable. Its fatal flaw was it would render Prometric's online scheduling system unable to assign those two days to examinees because the system would not know when those days were available. It would also make USMLE's two-consecutive-day policy on Step 3 test meaningless and virtually unenforceable because any Prometric Test Center could claim it often closes on certain weekday. It is worth noting that weekend days and holidays, when a Prometric Test Center was closed, were all clearly marked as unavailable for that specific test center on Prometric's online scheduling system. Zhang reasonably suspected that NBME's so-called senior staff group review never took place, and the finding was simply Ms. Patterson's personal opinion, actually a deliberate lie. It was highly probable in light of her history of falsifying documentation and committing fraud.

At this point, even though NBME failed to justify the administration of Zhang's Step 3 test on a Monday and a Thursday, Zhang was more concerned by its potential impact on his score. On April 2, 2010, he contacted NBME's Office of Scores and Examinee Records and was clearly informed that he could submit a request for further investigation of his extremely low Step 3 score. Such an

investigation is also known as "manual score recheck," in contrast to the routinely offered automated score recheck, which has already done for Zhang. [Doc. #29 p. 12 −13, Doc. #34 p. 8]. He was further instructed to email his request to scores@nbme.org with a headline of "Attn: Examinees Record Manager." Zhang did as instructed on the same day. [Doc. #34 Ex. G]. On April 6, 2010, however, he received a mysterious call from NBME claiming that "manual score rechecks" were not offered to non-US medical graduates. (Zhang now believes that the mysterious caller was Ms. Patterson of NBME's Test Administration.) Because Zhang did not receive his medical education in the U.S., a manual score recheck was not available to him. Surprisingly, on April 9, 2010, Zhang received an email from NBME's Office of Scores and Examinee Records stating, "After discussing your situation and our April 6, 2010 conversation with the Test administration Department, it was recommended that you contact them directly." [Doc. #34 Ex. I]. Without giving an explanation, Office of Scores and Examinee Records' suddenly reversed its decision to investigate Zhang's score. Its referral to the Office of Test Administration strongly implied there was a test administration breach (Step 3 test on two non-consecutive days of Monday and Thursday). This also raised a serious question about the validity of the score recheck reported to Zhang on March 26, 2010 (Doc. #34 Ex. F).

With his request for a "manual score recheck" unduly denied, Zhang once again turned to FSMB for answers. He wanted to know if there was any chance that administering his Step 3 test on Monday and Thursday could have impacted his score.

On April 26, 2010, the supervisor of FSMB's Office of Examination Service Ms. Debbie Cusson claimed during a phone conversation that the administration of Zhang's Step 3 test on Monday and Thursday would in no way affect his score. She explained that Zhang's test was delivered on a completely automated, computer-based test delivery system and his test data were simultaneously captured and transferred to NBME. She further asserted there were no needs for Prometric Testing Center to handle Zhang's Step 3 test data. [Doc. #1 p. 4-5, Doc. #29 p. 11]. Zhang believed Ms. Cusson but was not completely convinced that his extremely low score was correct. He told Ms. Cusson that would not give up his quest to seek for answers. Quite interestingly, shortly after the phone conversation with Ms. Cusson, Zhang received an email from Ms. Patterson of NBME stating in a threatening tone, "The review done by the group of senior staff at the NBME was the only appeal available to you. There are no higher offices at the NBME or FSMB to which you can appeal the final decision made by the group of senior staff." [Doc. #34 p. 9-10 and Ex. J].

With help from a professional attorney Mr. Randolph M. James, Zhang continued his quest for an objective investigation of his Step 3 score. Specifically, he wanted to be sure that his extremely low Step 3 score was indeed based on testing data from his two testing days, i.e., data from both days of testing were properly accounted for his score. On August 10, 2010, Mr. James sent a letter to FSMB requesting a). copies of Zhang's rechecked answer sheets (which were used for generating the March 26, 2010 score recheck results); b). a manual score recheck; and

c). an explanation of Zhang's test date compliance with USMLE's consecutive day requirement. [Doc. #1 Ex. E]. FSMB responded in a September 2, 2010 letter by simply citing the finding of the review done by NBME's so-called "senior staff group," refusing to provide copies of Zhang's rechecked answer sheets, and denying the request for a manual investigation of Zhang's Step 3 score. [Doc. #1 Ex. G]. Knowing the paramount significance of whether Zhang's two days' test data were properly accounted for deriving his Step 3 test score, Mr. James wrote FSMB again on November 4, 2010 to request the very basic information about "the percentage of questions on the first day of Step 3 that were scored correctly and the percentage of questions on the second day of Step 3 that were scored correctly." [Doc. #1 Ex. F]. Once again, FSMB denied the request in a November 10, 2010 letter, citing the reason for refusal as "Our efforts to reassure Dr. Zhang on the completeness and accuracy of his Step 3 score have already gone beyond those that the USMLE program ordinarily accords to examinees" and "We do not believe that providing Dr. Zhang with further data on his test administration is appropriate." [Doc. #1 Ex. H].

Considering that FSMB and NBME had already done the automated routine score recheck of Zhang's Step 3 test, furnishing these above requests would not be difficult. It was very troublesome to see that FSMB and NBME would refuse to make the effort to prove that Zhang's Step 3 score was indeed derived from his both days' of testing. With utmost disbelief, Zhang decided not to further pursue his quest and disengaged himself from Mr. James's legal representation. Mr. James even

commented that he could not fight the three appellees because they have big-name lawyers who charge at a rate of $1,500 per hour, comparing with his $270 per hour.

In late January of 2011, Zhang came across a lawsuit involving NBME [*Grant v. National Board of Medical Examiners, et al*. 2009 WL 1457698 (N.D.N.Y.)], in which it was clearly stated, "After a Step 3 exam ends, the test delivery vendor, Prometric, 'electronically bundles the examinee's Response Record and other Response Records from that testing center, encrypts the data and transmits it over secure lines to Prometric's data center.' The Response Records are stored at Prometric's data center until the NBME decrypts and scores the records using a computerized scoring program." [Doc. #1 p. 4-5, Doc. #27 p. 6-7, Doc. #29 p. 11-12]. This statement directly contradicts what Ms. Cusson of FSMB's Office of Examination Services asserted during a phone conversation on April 26, 2010. This begs the question: why did Ms. Cusson lie about how Step 3 test data are handled and transmitted at Prometric Test Centers? Zhang could only reason that she deliberately lied in an effort to convince him that there were no errors in scoring his Step 3 test. In fact, Zhang's Step 3 data for his two testing days could well be improperly handled by Prometric owing to his test administration on non-consecutive days of Monday and Thursday. (To illustrate how taking Step 3 test on Monday and Thursday could lead to Prometric Test Center fail to properly bundle electronically the two days' testing data, Zhang provided a logical and reasonable theory that is also very probable. [Doc. #34 p.14].)

With strong evidence showing that the validity of the routine score rechecked for his Step 3 test was in doubt, that Ms. Patterson of NBME falsified the senior staff group's review finding, and that Ms. Cusson of FSMB lied about Prometric Test Center's electronically bundling of testing data, Zhang brought his case to the Federal District Court in Greensboro, North Carolina on February 18, 2011 against the three defendants-appellees. [Doc. #1]. (It is interesting to note that counsels for three appellees all cited in their Informal Responses [Appeal Doc. #16 at p. 1, Appeal Doc. # 17 at p.6] that Zhang filed his lawsuit on February 11, 2011.) Counsel for FSMB and NBME filed Motion to Dismiss and the Supporting Brief on April 18, 2011 [Doc. #20, #21]; counsel for Prometric did the same on the same day [Doc. #23, #24]. Zhang filed his Response and the Supporting Brief in Opposition to Prometric's Motion to Dismiss on May 10, 2011 [Doc. #26, #27] and to FSMB and NBME's on May 12, 2011 [Doc. #28, 29]. Prometric filed its Reply Brief on May 25, 2011 [Doc. #30], and FSMB and NBME filed theirs on May 31, 2011 [Doc. #31].

On December 29, Magistrate Judge P. Trevor Sharp signed Recommendation of United States Magistrate Judge, that defendants-appellees' Motion to Dismiss be granted and that this action be **dismissed** (emphasis added) [Doc. #32]. Zhang filed his Objection to Recommendation Ruling by Magistrate Judge on January 13, 2012. [Doc. # 34]. FSMB and NBME filed their Response to Zhang's Objection on January 27, 2012 [Doc. #35]; Prometric filed its Response on January 30, 2012 [Doc. # 36]. On February 6, 2012, a judgment was signed by Judge Catherine C. Eagles to adopt

the Magistrate Judge's Recommendation that defendant-appellees's Motions to Dismiss are granted and that this action is **dismissed with prejudice** (emphasis added) [Doc. #38]. Without knowing such a judgment had been signed (before receiving it in the mail as Zhang is not an ECF participant), Zhang filed his Reply to defendants-appellees' Response on February 7, 2012. [Doc. #39]. On February 21, 2012, Judge Catherine C. Eagles ordered that the Court's 02/06/2012 order and judgment remain in effect. [Doc. #40]. Zhang filed his Notice of Appeal on February 27, 2012. [Doc. #41].

On March 13, 2012, Zhang filed his Informal Opening Brief in this Court [Appeal Doc. #11]. Informal Response Briefs by Prometric and FSMB/NBME were filed on March 26, 2012 [Appeal Doc. #15, #16] and March 30, 2012 [Appeal Doc. #17], respectively.

## KEY ISSUE FOR REVIEW

DID THE DISTRICT COURT MAKE ITS RULING WITHOUT FULLY CONSIDERING THE AMPLE FACTUAL EVIDENCE PROVIDED BY ZHANG TO SUPPORT HIS CLAIM OF "WITHHOLD OR DENY RIGHT OR PRIVILEGE" AND "BREACH OF INTERNAL POLICIES."

## POINT-TO-POINT REBUTTAL

ISSUE I.    The District Court Ruled on the Civil Statute Cited by Zhang [Doc. #2 Civil Cover Sheet], But Did not Fully Consider Zhang's Claims of 'Withhold or Deny Right or Privilege' and 'Breach of Internal Policies.' [Doc. #2 Civil Cover Sheet]

It is clear and indisputable that, on his Civil Cover Sheet [Doc. #2], Zhang cited 42 USC § 2000a-2(a) as the US Civil Statute under which he was filing and he

also cited 'withhold or deny right or privilege, breach of internal policies' as his cause of action. It is also unquestionable that, in the Recommendation of United States Magistrate Judge, Magistrate Judge P. Trevor Sharp discussed the District Court's decision solely based on 42 U.S.C. § 2000a-2a and 42 U.S.C. § 1983. [Doc. #32 p. 6-8]. However, in granting appellees' Motions to Dismiss, no efforts were given in the DISSCUSSION section of the Recommendation to address whether the appellees had breached USMLE policies. It also did not form an opinion on whether NBME had unduly deprived Zhang's legitimate request for a manual score recheck in order to cover up the damage (an extremely low Step 3 score that is at or below the one percentile) caused by the breach of USMLE policies. In his Objection to the Magistrate Judge's Recommendation [Doc. #34], Zhang provided ample factual evidence to support his claim of 'withhold or deny right or privilege' and 'breach of internal policies.' He requested the District Court accept these lines of evidence and make a *de novo* determination *per* Federal Rules of Civil Procedures 72(b).

In the Order of February 6, 2012 by Judge Catherine C. Eagles, it was simply stated, "The Court has appropriately reviewed the portions of the Magistrate Judge's report to which objection was made and has made a *de novo* determination which is in accord with the Magistrate Judge's report." It continued, "The Court therefore adopts the Magistrate Judge's recommendation." [Doc. #37]. Again, there were no

discussions regarding whether appellees have breached USMLE policies, given the ample evidence in Zhang's Objection to the Magistrate Judge's Recommendation.

Zhang did not object to Magistrate Judge's Recommendation of his failure to state a claim for relief under section 2000a and section 2000a-2a. Fully aware that citing 42 U.S.C. § 2000a-2(a) was an error and being a *pro se* litigant, Zhang believed he should be held to less stringent standards than those who are counseled by attorneys. Cf. Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972) (per curiam) (holding pro se complaint "to less stringent standards than formal pleadings drafted by lawyers"). The Court is required "to go to particular pains to protect *pro se* litigants against consequences of technical errors if injustice would otherwise result." U.S. v. Sanchez, 88 F.3d 1243 (D.C. Cir. 1996).

Counsels for FSMB and NBME argued, "Any effort by Plaintiff-Appellant to add additional facts or amend his allegations through his memorandum or objections or through his arguments on this appeal should be rejected." [Appeal Doc. # 17 p. 2 footnote]. Such argument is apparently not in accord with 28 U.S.C. § 36(b)(1), which states,

> If objection is made to the recommendation of a magistrate judge, a judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also

receive further evidence or recommit the matter to the magistrate judge with instructions. (underline added)

Furthermore, Zhang did not add or amend his allegations in any way. What he has provided in his memorandum or objections or argument on this appeal are facts, factual evidence, or inferences that are products of logic and reason and that rest on evidence. They are provided to support claims in his initial Complaint [Doc. #1].

ISSUE II.    Prometric Has Actually Breached USMLE Policy of Two-Consecutive-Day Testing by Administering Zhang's Step 3 Test on Monday of 1/25/2010 and Thursday of 01/28/2010.

It is patently absurd that counsels of Prometric accused Zhang of providing a self-serving interpretation of USMLE policy. [Appeal Doc. #16 p. 8]. Zhang did not claim that administering Step 3 test on two non-consecutive days was a violation of USMLE policy. Instead, he claimed it was a violation of USMLE policy to administer Step 3 test on two non-consecutive days of Monday and Thursday when the Prometric Test Center was open on the intervening Tuesday and Wednesday, just as he has experienced for his Step 3 test. The fundamental difference here is that Prometric is allowed per USMLE policy to administer Step 3 test on two non-consecutive days, if and only if the day 2 of Step 3 test falls on non-business day(s) when the center is scheduled to close (such as weekends and holidays). The fact that Prometric has violated USMLE policy in administering Zhang's Step 3 test was acknowledged unequivocally by Prometric itself. *See page 3 above*. Therefore, it is,

actually, counsels for Prometric who have provided self-serving interpretation of USMLE policy.

In the Recommendation of United States Magistrate Judge, Magistrate Judge P. Trevor Sharp wrote, "Although the record does not presently show the testing center at issue was open or closed on the intervening Tuesday and Wednesday, Plaintiff contends that his scheduling 'was indeed in violation of USMLE policy.'" (Doc. #32 p. 3]. So far, none of the three appellees have provided any evidence to show that the testing center at issue was actually closed on these two specific intervening days. When Zhang provided evidence in his Response Brief [Doc. #29 p. 10] showing that the testing center at issue was actually open on these two days, counsels of Prometric argued in their Reply Brief with a self-serving explanation suggesting the testing center at issue was closed and later opened due to increased demand [Doc. #30 p. 6]. This argument was also cited as a footnote in Magistrate Judge's Recommendation [Doc. # 32 p. 3 footnote]. Obviously, such argument was pure sophistry and demonstrated the lack of basic knowledge of Prometric's online scheduling system. Zhang effectively countered that the argument was entirely without merit in his Objection [Doc. #34 p.5-6]. And counsels of Prometric have since abandoned that argument.

FSMB has initially expressed serious concern over the administration of Zhang's Step 3 test (*See page 3 above*), but later simply adopted the rationalization

by NBME that was completely irrelevant or unfounded. On two separate occasions, NBME tried to justify the administration of Step 3 test on two non-consecutive days of Monday and Thursday, but to no avail on both attempts. *See page 4-5 above*. It is absurdly ironic that, as cosponsor of USMLE, NBME cannot correctly interpret USMLE policy. Even worse, the director of NBME's Test Administration Ms. Patterson stated in her letter findings from a "senior staff group" review that the test center at issue was "often closed on Tuesday and Wednesday." [Doc. #1 Ex. D]. Such a finding is clearly falsified information from someone who has a history of falsifying documentation and committing fraud. *See p. 4-5 above*.

ISSUE III.    Prometric Has Failed to Electronically Bundle Zhang's Step 3 Test Files in a Proper Manner for Scoring by NBME due to Administration of His Test on Two Non-Consecutive Days of Monday (01/25/2010) and Thursday (01/28/2010).

In light of the lie told by Ms. Cusson of FSMB and based on all the facts at hand, Zhang provided a highly reasonable and equally plausible scenario in his Objection [Doc. #34 p. 13-14] to explain how administering his Step 3 test on Monday and Thursday by Prometric could cause failure to electronically bundle his two days' test files and ultimately lead to improperly scoring his test. The District Court did not even bother to discuss this fact-and-evidence-based argument in making its judgment on February 6, 2012. Counsels for appellees have repeatedly argued in the lower court and again here in this Court that NBME properly scored Zhang's Step 3 test simply because NBME had data files accounted for his two

testing days. This argument is again pure sophistry. Apparently, they have been trying to equate having saved both testing files with having properly scored the test. If the files were saved but not electronically bundled properly, NBME's scoring software would not be able to score the test in its whole; hence the score generated would be based only on part of the test. Zhang has precisely argued that the administration of his Step 3 test on Monday and Thursday led to a failure by Prometric to electronically bundle his test files, which in turn led to a score that was at or below the bottom 1% among all examinees. He begs a simple question: Should anyone be willing to accept such an extremely low score, considering that person has spent over a year and a half to prepare for the test and his test has gone well, and also considering that person had passed Step 1, Step 2 (CK and CS) with good scores all on first try and within an eight-month period?

As FSMB and NBME had Zhang's test files and had conducted an automated routine score recheck, it was very reasonable to request copies of his score recheck sheets from FSMB. [Doc. #1 Ex. E]. FSMB refused. [Doc. #1 Ex. G]. Then, Zhang requested FSMB provide the percentage of items answered correctly on each day of his test administration. [Doc. #1 Ex. F]. Again, FSMB refused. [Doc. #1 Ex. H]. If either of the above requests had been furnished, this case would not have ended up in the District Court, let alone this Court. The key issue here is that, with all the doubt

surrounding it, FSMB and NBME have not shown and continued refusing to show that Zhang's Step 3 score was based on his whole test.

ISSUE IV.    NBME's Office of Scores and Examinee Records Has Initially Agreed to Accept and Later Unduly Denied Zhang's Legitimate Request for a Manual Score Recheck due to Interference from Its Office of Test Administration.

Counsels of FSMB and NBME were clearly confused about the two types of score recheck their clients offer. [Appeal Doc. #17 p. 13]. The one their clients did for Zhang's Step 3 test was the routine score recheck done automatically by NBME's score recheck software. This type of recheck is less likely to pick up errors caused by test administration. This was precisely the reason that Zhang requested NBME's Office of Scores and Examinee Records for a further investigation of his score, which is also known as "manual score recheck." That office initially agreed to investigate Zhang's Step 3 score, but later declined to do so and instead referred Zhang to NBME's Office of Test Administration. [Doc. #1 p. 3, Doc. #34 at p. 8-9]. *See also p. 5-6 above.*

So, let us logically reason why NBME's Office of Scores and Examinee Records shirked the agreed-on responsibility to conduct an objective score investigation and turned it to its Office of Test Administration. Here, it is not hard to reasonable conclude that there was a violation in administering Zhang's Step 3 test, which was on two non-consecutive days of Monday (01/25/2010) and Thursday (01/28/2010).

## CONCLUSION

For the reasons outlined above, it is apparent that the lower court has made an error in this case by making a ruling without fully considering the ample factual evidence provided by Zhang to support his claims of "Withhold or deny right or privilege" and "Breach of internal policies." Zhang respectfully requests that the judgment made by the lower court be reversed.

Respectfully submitted this the 11th day of April 2012.

JIHUI ZHANG, *pro se* Plaintiff-Appellant
102 Rowe Road
Chapel Hill, NC 27516
Telephone: 919 942 1880
E-mail: zjh1023@gmail.com

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

1. This brief complies with the page limitation and type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

This brief contains 19 pages with 4,800 words, excluding the parts of the brief exempt by Fed. R. App. P. 32(a)(7)(B)(iii);

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the style requirements of Fed. R. App. P. 32(a)(6) because:

This brief has been prepared in a proportional spaced typeface using Microsoft Word in 14-point Times New Roman.

This the 11th day of April 2012.

JIHUI ZHANG, *pro se Plaintiff-Appellant*
102 Rowe Road
Chapel Hill, NC 27516
Telephone: 919 942 1880
E-mail: zjh1023@gmail.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing Informal Reply was served upon all Defendants-Appellees' counsels on April 11, 2012 by first-class mail, postage paid, addressed to the following:

Patrick M. Kane
Jonathan A. Berkelhammer
Smith Moore Leatherwood LLP
300 N. Greene Street
Suite 1400
Greensboro, NC 27401

*Attorneys for Defendants-Appellees Federation of State Medical Boards and National Board of Medical Examiners*

Benjamin R. Norman
Reid L. Phillips
Brooks, Pierce, McLendon, Humphery & Leonard, LLP
2000 Renaissance Plaza
230 North Elm Street
Greensboro, NC 27401

*Attorneys for Defendant-Appellee Prometric, Inc.*

JIHUI ZHANG, *pro se* Plaintiff-Appellant
102 Rowe Road
Chapel Hill, NC 27516
Telephone: 919 942 1880
E-mail: zjh1023@gmail.com



PRIORITY MAIL

PLEASE PRESS

23219

1024

UNITED STATES POSTAL SERVICE

INSPECTED

APR 16 2012

U. S. MARSHALS

USPS TRACKING NUMBER

9502 5106 2025 2102 4412 07

**UNITED STATES POSTAL SERVICE**

Flat Rate Mailing Envelope

*Visit us at usps.com*

INTERNATIONAL RESTRICTIONS APPLY:

Customs forms are required. Consult the
International Mail Manual (IMM) at pe.usps.gov
or ask a retail associate for details.

Jihui Zhang, MD, PhD.
102 Rowe Road
Chapel Hill, NC 27516

Patricia S. Connor, Clerk
U.S. Court of Appeals for the Fourth Circuit
1100 East Main Street, Suite 501
Richmond, Virginia 23219

